# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

—————————————————————————
)
**MALAIPERUMA SUNDARAMURTHY,**                )
)
**Plaintiff,**                )
)
**v.**                )
)
**ABBOTT VASCULAR, INC.,**                )
)
**Defendant.**                )
—————————————————————————  )

**CIVIL ACTION
NO.  4:21-40055-TSH**

## ORDER AND MEMORANDUM ON ABBOTT'S MOTION TO DISMISS (Docket No. 10) and PLAINTIFF'S MOTION TO AMEND (Docket No. 26)

**March 18, 2022**

**HILLMAN, D.J.**

Plaintiff Malaiperuma Sundaramurthy commenced this action against defendant Abbott Vascular, Inc. ("Abbott") in Massachusetts state court, alleging products liability claims under Massachusetts law.  Abbott removed the case to federal court.  (Docket No. 1).  Thereafter, Abbott moved to dismiss for failure to state a claim.  (Docket No. 10).  Although the Court agreed that the complaint, as pled, failed to state a claim, the Court allowed the plaintiff an opportunity to move to amend.  (Docket No. 25).  The plaintiff has now done so.  (Docket No. 26).  For the following reasons, the Court ***grants in part*** and ***denies in part*** the plaintiff's motion to amend.  The Court also ***grants in part*** and ***denies in part*** Abbott's motion to dismiss.

## Background

The following facts are drawn from the proposed amended complaint attached to the plaintiff's motion to amend.  (Docket No. 26-2).  The plaintiff suffered a heart attack in June 2018. At St. Vincent Hospital for treatment, doctors inserted a catheter into one of the plaintiff's arteries.

At the tip of the catheter was a balloon.  Once the balloon was inside the plaintiff's artery, doctors inflated the balloon to remove blockage.  Doctors then inserted three stents -- mesh-like devices made of metal -- to keep the artery open.  When the stents could not keep the artery open, doctors decided to insert a fourth stent.  To do so, they used a stent system, branded as the Graftmaster stent system, manufactured by Abbott.  The balloon part of the Graftmaster stent system failed to retract inside the plaintiff's artery, preventing the fourth stent from opening properly.  As a result, the plaintiff suffered injury.

The plaintiff alleges that Abbott negligently and carelessly designed and manufactured the stent system inserted into his artery, such that the stent system was defective and unsafe according to the Food and Drug Administration's Current Good Manufacturing Practices ("CGMP").  The plaintiff points to sections of the CGMP requiring manufacturers to develop, implement, and maintain quality control systems for the design and manufacture of devices.  *See* 21 C.F.R. §§ 820.1, 820.5, 820.20, 820.25.

The plaintiff alleges that Abbott used a manufacturing process that exposed some of its balloons to excess heat during manufacturing.  The excess heat weakened the material "proximal to the balloon bond."  The weakened balloons, then, exhibited difficulty deflating or were unable to deflate.  After Abbott received reports of injury due to defective balloons, Abbott recalled one type of its catheters, but not the Graftmaster stent system.  After Abbott received additional reports of injuries, Abbott recalled more of its catheters, but still not Graftmaster stent system.  The plaintiff alleges that Abbott failed to warn him of these problems, including by failing to provide him with an instruction manual for the stent system.

The plaintiff asserts three claims against Abbott.  Count I of the plaintiff's proposed amended complaint alleges that Abbott was negligent with respect to the design, manufacture, and

warnings of its stent system.  Count II alleges that Abbott breached the implied warranty of merchantability with respect to the warnings of its stent system.  Count III alleges that Abbott breached an express warranty.

The plaintiff also names two new defendants in the proposed amendment complaint.  He alleges that he contracted with Harold Moore, a cardiologist with a practice in Milford, Massachusetts, and VHS Acquisition Subsidiary Number 7, Inc., d/b/a St. Vincent Hospital ("St. Vincent"), the hospital where he had his surgery, for professional services related to medical care and treatment.  He alleges that, although Moore and St. Vincent have custody and control of the coronary catheter and balloon used in his procedure, they have refused to allow him to examine the equipment or otherwise share information regarding the procedure.  He further alleges that Moore and St. Vincent withheld information concerning Abbott's stent recalls.  Finally, without specifically asserting a cause of action against either Moore or St. Vincent,[1] the plaintiff alleges that they engaged in a conspiracy to keep quiet about the problems observed during the procedure, and that they breached the implied covenant of good faith and fair dealing.

## Discussion

### 1. Abbott

In the Court's previous order on Abbott's motion to dismiss, the Court concluded that the claims pled in the plaintiff's original complaint were preempted by the Medical Device Amendments ("MDA"), 21 U.S.C. § 360 *et seq.*, to the Food Drug and Cosmetic Act ("FDCA"). (Docket No. 25).  For certain medical devices, the MDA expressly preempts state law claims

---

[1] The version of the proposed amended complaint that the plaintiff filed with the Court is different than the version of the proposed amended complaint the plaintiff shared with the defendants. While the version filed with the Court does not assert any claims against Moore or St. Vincent, the version shared with the defendants asserts claims for civil conspiracy, breach of contract, and declaratory relief.  (Docket No. 33-1).

seeking to impose safety and effectiveness requirements "different from, or in addition to" federal requirements applicable to those devices. *See* 21 U.S.C. § 360k(a); *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 316 (2008). State law claims that impose requirements "parallel" to federal requirements, however, are not preempted. *See Riegel*, 552 U.S. at 330. State law claims are "parallel" to federal requirements when they are premised on a violation of federal requirements. *See id.* Claims that are not merely "parallel" to federal requirements but seek to "enforce" federal requirements are impliedly preempted. *See Plourde v. Sorin Group USA, Inc.*, 23 F.4th 29, 33 (1st Cir. 2022).

To determine whether a state law claim is expressly preempted, courts ask (1) whether there are federal requirements applicable to the device in question, and (2) whether the state law claims are based on requirements that are different from, or in addition to, those federal requirements. *See Riegel*, 552 U.S. at 321-22. The device in question here -- the Graftmaster stent system -- is subject to federal requirements. It received premarket approval from the FDA in 2001 under a Humanitarian Device Exemption and, thus, must be designed, manufactured, and labelled according to the specifications approved by the FDA. *See* 21 C.F.R. § 814.108. The plaintiff's original complaint alleged, generally, that Abbott negligently designed and manufactured the Graftmaster stent system and failed to warn him of its problems. Claims premised on such general allegations are preempted. *See, e.g., Funk v. Stryker Corp.*, 631 F.3d 777, 782 (5th Cir. 2011). Because the plaintiff did not allege a violation of an FDA requirement, the plaintiff sought to impose requirements that were different from, or in addition to, federal requirements. *See, e.g., Weber v. Allegran*, 940 F.3d 1106, 1111 (9th Cir. 2019).

The plaintiff's proposed amended complaint is more specific and alleges a violation of federal regulations applicable to the Graftmaster stent system. The plaintiff alleges that Abbott

negligently designed and manufactured its devices in such a way that made them unsafe and defective according to the CGMP; specifically, the sections of the CGMP related to quality assurance. *See* 21 C.F.R. §§ 820.1, 820.5, 820.20, 820.25. The plaintiff alleges that Abbott's manufacturing process exposed some balloons to excess heat, and that balloons weakened from excess heat have difficulty deflating. The plaintiff alleges that the balloon used in his procedure failed to deflate inside his artery, causing him injury. The plaintiff further alleges that Abbott received reports of injuries due to defective balloons but did not recall the Graftmaster stent system

While not all courts agree that a plaintiff can state a parallel claim by alleging a violation of a general FDA regulation, such as the CGMP, as opposed to a device-specific requirement, *see Weber*, 940 F.3d at 1114 (citing cases), the Fifth, Sixth, Seventh, and Eleventh Circuits have held that an alleged violation of the CGMP can be sufficient at the pleading stage, *see Mink v. Smith & Nephew, Inc.*, 860 F.3d 1319, 1331 n.3 (11th Cir. 2017); *Bass v. Stryker Corp.*, 669 F.3d 501, 511-12 (5th Cir. 2012); *Bausch v. Stryker Corp.*, 630 F.3d 546, 555 (7th Cir. 2010); *Howard v. Sulzer Orthopedics, Inc.*, 382 Fed. Appx. 436, 440 (6th Cir. 2010). Considering that the First Circuit has not addressed the issue, the Court agrees with the approach in those other circuits. *See Carrelo v. Advanced Neuromodulation Systems, Inc.*, 777 F. Supp. 2d 303, 313 n.4 (D. P.R. 2011). "[I]f a plaintiff pleads that a manufacturer of a Class III medical device failed to comply with . . . the CGMPs themselves and that this failure caused the injury, the plaintiff will have pleaded a parallel claim." *Bass*, 669 F.3d at 512.

With respect to a manufacturing defect, the plaintiff has adequately pled a plausible parallel claim. *See Bausch*, 630 F.3d at 558 ("There are no special pleading requirements for product liability claims in general, or for Class III medical device claims in particular."). Reading the plaintiff's complaint "as a whole," *Garcia-Catalan v. United States*, 734 F.3d 11, 103 (1st Cir.

2013), the plaintiff has plausibly alleged that Abbott exposed some balloons to excess heat, that Abbott's manufacturing process failed to address this error despite repeated reports of injury, that Abbott's failure violated the CGMP as it relates to quality assurance, and that Abbott's violation ultimately caused him injury. Thus, the Court will allow the plaintiff to amend his complaint to proceed on his manufacturing defect theory. The plaintiff's negligence claim (Count I) is the only one of his claims that alleges a manufacturing defect.

With respect to a failure to warn, the plaintiff has not adequately pled a plausible parallel claim. The plaintiff alleges that Abbott failed to warn him of the problems associated with its stents. Requiring Abbott to do so, however, would impose requirements that are different from, or in addition to, the requirements of the CMPG that the plaintiff identifies. *See Caplinger v. Medtronic, Inc.*, 784 F.3d 1335, 1340-41 (10th Cir. 2015) (complaint properly dismissed where asserted claims substantially exceeded the scope of identified regulations). The plaintiff has not identified a regulation requiring Abbott to provide the warnings he implicitly proposes. *See Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1280 (10th Cir. 2021) (court not obligated to search for theories or authorities not presented by the plaintiff). Thus, to the extent the plaintiff's claims are premised on a failure to warn, they are preempted.

With respect to a design defect, the allegations in the complaint remain deficient. The plaintiff's allegation that Abbott used a manufacturing process that exposed "some" balloons to excess heat suggests a manufacturing defect, not a design defect. Indeed, the complaint labels this failure a "manufacturing error," not a "design error." The complaint plainly does not state a claim for a design defect. *See Coonan v. Ethicon, Inc.*, 2021 WL 5111867, at *3 (D. Mass. Nov. 3, 2021).

In sum, the plaintiff may proceed on a manufacturing defect theory, but not on failure to warn or design defect theories. The plaintiff's negligence claim (Count I) can proceed, subject to those limitations. The plaintiff's breach of implied warranty claim (Count II), which only asserts a failure to warn theory, will be dismissed. As for the plaintiff's breach of express warranty claim (Count III), the plaintiff does not allege any express warranty made by Abbott. *See Taupier v. Davol, Inc.*, 490 F. Supp. 3d 430, 438 (D. Mass. 2020). Accordingly, that claim does not meet minimum pleading standards and will be dismissed as well.

### 2. New Defendants

The plaintiff made no mention of additional defendants in his opposition to Abbott's motion to dismiss or at the hearing on that motion. Nonetheless, the plaintiff proposes to add two new defendants -- Moore and St. Vincent -- in his amended complaint. The plaintiff has not, however, asserted any causes of action against them. The plaintiff, quite literally, fails to state a claim. For that reason alone, the motion to add Moore and St. Vincent to the case can be denied.

The plaintiff might have sought to assert claims for conspiracy and breach of contract against Moore and St. Vincent.[2] But even if he had, such claims would have been futile. As for the conspiracy claim, Massachusetts courts recognize two types of civil conspiracy. *See Snyder v. Collura*, 812 F.3d 46, 52 (1st Cir. 2016). One "is a form of vicarious liability for the tortious conduct of others," requiring proof of an underlying tort. *See id.* (quoting *Taylor v. Am. Chemistry Council*, 576 F.3d 16, 34 (1st Cir. 2009)). The other is "based on the defendants' allegedly unique ability to exert a 'peculiar power of coercion' when acting in unison." *Id.* (quoting *Jurgens v.*

---

[2] As stated, the proposed amended complaint that the plaintiff sent to the defendants, but not to the Court, included such claims. That proposed amended complaint also asserts a claim for declaratory relief, which would be derivative of the conspiracy and breach of contract claims. *See Doe v. Brown Univ.*, 166 F. Supp. 3d 177, 197 (D. R.I. 2016).

*Abraham*, 616 F. Supp. 1381, 1386 (D. Mass. 1985)).  Here, the plaintiff alleges that Moore and

St. Vincent "refused to share their knowledge of the events leading to the failure to the stent to

open properly, or to allow [the plaintiff] to examine the equipment used to insert the stent;" that

Moore and St. Vincent "engaged in a conspiracy . . . to keep quiet about the problems observed in

the insertion and deployment of the stent in [his] artery;" that Moore and St. Vincent "worked

together . . . to conceal the true nature of events" from the plaintiff; and that Moore and St. Vincent

"had a common plan to conceal the events surrounding the unsuccessful deployment of the stent,

and the nature of the defect in the stent."  As to the first kind of conspiracy, the plaintiff has not

alleged or identified any underlying tort for which the defendants can be held vicariously liable.

As to the second kind of conspiracy, there is simply nothing in the proposed amended complaint,

beyond conclusory allegations, to suggest that Moore and St. Vincent were acting in concert.  *See*

*Soni v. Boston Medical Center Corp.*, 683 F. Supp. 2d 74, 100 (D. Mass. 2009).  Indeed, there are

no allegations concerning the relationship between Moore and St. Vincent, such as whether Moore

is affiliated with St. Vincent, or whether Moore was even the doctor who conducted the plaintiff's

procedure at St. Vincent.

   As for the breach of contract claim, contracts in Massachusetts include an implied covenant

of good faith and fair dealing.  *T.W. Nickerson, Inc. v. Fleet Nat. Bank*, 924 N.E.2d 696, 703 (Mass.

2010).  The covenant prevents either party from doing anything "that will have the effect of

destroying or injuring the right of the other party to the fruits of the contract."  *Id.* (quoting

*Anthony's Pier Four, Inc. v. HBC Assocs.*, 583 N.E.2d 806, 820 (Mass. 1991).  The scope of the

covenant, however, "is only as broad as the contract that governs the particular relationship."  *Id.*

(quoting *Ayash v. Dana-Farber Cancer Inst.*, 822 N.E.2d 667, 684 (Mass. 2005).  Here, the

plaintiff alleges that he contracted with Moore and St. Vincent for "professional services related

to [his] medical care and treatment." He alleges that Moore and St. Vincent concealed information from him concerning the procedure, the stent, and Abbott's prior recalls and acted in bad faith to deprive him of the benefits of the doctor-patient relationship. Again, the plaintiff's allegations are conclusory. The plaintiff has not provided any details relating to the contract itself which could plausibly suggest that the scope of the contract encompassed disclosure of the information the plaintiff seeks.

Finally, the addition of Moore would divest the Court of subject matter jurisdiction over the plaintiff's claims because both Moore and the plaintiff are Massachusetts residents. "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). Courts have broad discretionary authority to permit or deny joinder in these circumstances. *See Kelley v. Vermont Mut. Ins. Co.*, 407 F. Supp. 2d 301, 305 (D. Mass. 2005). Factors a court should consider include "the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether plaintiff has been dilatory in asking for amendment, whether plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities." *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987).

In his opposition to the plaintiff's motion to amend, Moore attached a letter sent to him by plaintiff's counsel on July 13, 2021, requesting "a doctor's report" concerning the plaintiff's procedure, injuries, and treatment. (Docket No. 33-1). In his reply to Moore's opposition, the plaintiff contends that he did not want to add Moore of St. Vincent to this action, but after they "refused to voluntarily cooperate," he had no choice. (Docket No. 37 at 5). Because the plaintiff has not proposed a valid claim for relief against Moore -- indeed, he seems to admit that he does not intend to recover against Moore, (Docket No. 37 at 4) -- divesting the Court of subject matter

jurisdiction by adding Moore to this suit makes little sense.  The Court's discretion under 42 U.S.C. § 1447(e) is additional reason to deny the plaintiff's request to add Moore.

### Conclusion

For the reasons stated here, as well as in the Court's previous order, (Docket No. 25), Abbot's motion to dismiss (Docket No. 10) is ***granted in part*** and ***denied in part***.  Abbot's motion is granted as to Counts II and III and denied as to Count I.  Concomitantly, the plaintiff's motion to amend is ***granted in part*** and ***denied in part***.  The plaintiff's motion is granted insofar as it adds factual support to Count I under a manufacturing defect theory.  The plaintiff's motion is denied insofar as it relates to Count II and III and adding Moore and St. Vincent to the suit.

**SO ORDERED**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**

10